By the Court.—Barbour, Ch. J.
This action was brought to recover the value of certain goods delivered by the plaintiffs at Providence, Rhode Island, to the defendants, as common carriers, to be transported by the latter on their steamer Oceanus, to the city of Hew York; and which goods were destroyed by fire together with the said vessel, while lying at a wharf in Hew York after the completion of the voyage, but before such goods were discharged or delivered to the consignees.
The defendants claimed that they were exempt from liability by the act of Congress of March 3, 1851 (9 Stat. at L. 635), which declares that “no owner or' owners of any ship or vessel shall be subject or liable to answer for or make good to any one person or persons, any loss or damage which may happen to any goods or merchandise whatsoever, which shall be shipped, taken in, or put on board any such ship or vessel, by reason or by means of any fire happening to or on board of the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners.” And, for the purpose of showing that the fire was not caused by their design or neglect, the defendants, upon the trial, presented evidence tending to prove that it was accidental, and was not caused by *378 any fault or negligence on tlieir part. The court, however, stopped the cross-examination of the witness on that subject, upon the ground that the owners of the steamer were not exempted from liability for the loss by the act in question, inasmuch as such vessel, in the opinion of the court, was engaged in inland navigation,, and, for that reason, was such a vessel as was especially excluded" from the exemption by a further provision in the same statute, which is in the words following : “ This act shall not apply to the owner or owners of any canal-boat, barge, or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation.”
The court thereupon directed a verdict for the amount of the claim as proven, and further directed that the entry of the judgment be suspended, and the exceptions of the defendants heard at general term in the first instance.
The question as to what waters were included in the term “inland navigation,” was fully considered and •discussed by Judges Nelson and Catron in their opinions in the case of Moore v. Transportation Company, 2 How. U. S. Sup. Ct. 1, which was an action to recover the value of certain goods delivered to the defendants as common carriers by the plaintiff, for transportation across Lake Erie, and destroyed by an accidental fire during such transit. The principal question before the court was whether vessels navigating Lake Erie, were or were not to be considered as vessels engaged in “inland navigation,” within the meaning and intention of the statute. Judge Nelson, in delivering the prevailing opinion upon that question, stated that the immediate inducement to the passage of the act of 1851 by Co'ngress, was the then recent destruction by an accidental fire of the steamer Lexington with her cargo, upon Long Island, Sound, which entailed a ruinous loss upon the owners of the vessel, *379 because of their liability as common carriers; and he assumed from that fact, as well as from the language of the act itself, that the. statutory exemption from liability was intended to apply to all vessels employed in navigating the sound; and, upon that assumption, he successfully reasoned, on comparison of the relative sizes of Lake Erie and Long Island Sound, the dangers of navigation upon each, the construction of their vessels, &c., that vessels running upon Lake Erie could not be considered as engaged in inland navigation, although its waters had no natural navigable connection with the sea, but were wholly interior or mediterranean. Judge Catkojt expressed the same opinion in regard to vessels navigating the sound, although he dissented from the ultimate conclusion of the court touching the waters of the great lakes. The judgment of the United States supreme court in that case, founded as it was upon the assumptions and reasoning above adverted to, must be considered as a decision by the highest appellate tribunal, in so far, at least, as concerns the construction of acts of Congress, that vessels employed in navigating Long Island Sound are not, because of that, vessels engaged in inland navigation.
It is true a voyage from Providence to Hew York embraces not only the sound, but a bay at the eastern end of the route and that portion or extension of the sound which is called. East River at its western terminus. It appears, too, from the evidence, that when the fire occurred, the steamer was lying at her pier on the Hudson River side, and, therefore, between the banks and on the water of that river. But those facts do not essentially change _ the question nor affect the result. For in the case above cited the court say, in effect, that a vessel constructed for ocean or coastwise navigation, and used for that purpose, does not come within the exceptions mentioned in the act, although *380 portions of her trips may be upon bays or rivers, in the course of the same voyage. The court erred, therefore, in directing a verdict for the plaintiff.
The verdict should be set aside and a new trial ordered, with costs to abide the event.